The next argument is in Loomis v. Merit System Protection Board, Appeal 2008-3035. Mr. Lynch, good morning to you. Welcome to the court. Good morning, Your Honor. Please proceed. I may please the court. Colin Lynch, who is a zolophagella noocline bound in Friedman, on behalf of the petitioners Bruce Loomis, John Stirl, Joseph Burge, and Richard Levy. This appeal comes before this court on the issue of whether or not the Merit System Protection Board, the MSPB, abuses discretionary authority in deciding not to grant discretionary authority that's unique to them, why do we have authority to review that at all, their refusal to exercise their discretion? Well, that's a good question, Your Honor. And to be quite frank in reviewing this court's cases, this court has never really directly said whether they do. I've always been troubled by that. You can read it in many of our instances. That's correct. I can't read the cases any other way. Does the authority of the board on its own to reopen the case have any standards attached to it? It certainly does. It certainly does, Your Honor. In fact, they have a fairly, I argue, a fairly specific standard, and that's in the cases Beck. Beck is what I view in reading through the merit system. Now, is there any statutory or regulatory standard, or is it just up to them? And of course, in one case they'll give one reason, and in another they'll give a different reason perhaps because it's totally up to them. Is there anything other than the cases? The regulatory authority that exists in a regulation is that they may on their own motion, is the terminology in the statute, they may review on their own motion or reopen or reconsider a decision below. But by what standard? Does the regulation contain any standard at all, or does it simply empower them to do it whenever they think they want to do it? I would argue it doesn't. I would argue if the regulation wanted to make it, you know, it's the discretionary authority, but discretionary authority in the terms of agency action is nothing new. But in most cases, the discretionary authority of an agency is limited by certain criteria that are right in the regulation that grants the authority in the first place. By contrast, this appears to be a circumstance in which the board enacts a regulation in which they give themselves the power to reopen, and there's no standard at all which would leave their discretion uncaverned, unlimited. Well, that's what I would argue. If they wanted to give themselves complete and unlimited discretionary authority, they could very well have done it in a regulation. It's still unclear to me. Does the regulation itself, just the regulation that authorizes the board to reopen on its own give any standards that it is to apply in doing that? The regulation itself does not. That's all I want to know. Okay. The regulation does not. That's correct, Your Honor. But I would note that I was listening to the prior case, and I practiced a lot of labor law before the National Labor Relations Board, and you had mentioned how the National Labor Relations Board engages in adjudicative rulemaking. Well, I view the Merit System Protection Board as sort of a hybrid. There's rulemaking. That's, for instance, the rule that grants them discretionary authority here. But the Merit System Protection Board also does engage in an adjudicated process, whereby they're interpreting and giving clarification as to what their underlying regulations mean. And it's our position that the Merit System Board, through its adjudicated process, that is, in cases that I've cited in my brief, such as Beck, and there's – Beck's the primary one. But there are others, Gordon Querton v. U.S. Postal Fields v. Officer Lynch. Even if we get past this discretion and whether it's reviewable, our court has in a few occasions said, we're leaving that question open. But even if we can review it, it's going to be a very heavy burden on you to demonstrate a reason that they abuse their discretion in not exercising their discretion. What would be the basis for your – to meet that heavy burden? Well, there's no question. Petitioners understand that that burden is heavy. I think it's been described as broad discretion, if you want to call it discretion. If there is, we'll get to your answer. Well, my answer is that in cases that – the board has discussed a standard that they've used in deciding whether or not reopening is warranted. And that standard is set forth in several other cases. What do you put forth to meet your heavy burden? What I put forth is that a retroactive application of the OPM regulation to reduce the petitioner's pay – and there seems to have been a rush to implement your client's salary to avoid the implementation of the rule. So there's an ambiguity as to whether it's retroactive in fact or only as a consequence of the agency trying to circumvent the rule. Well, it may be both, but the way – If it's both, and I think it may be, there's ambiguity, how does that meet your heavy burden? If you're as much at fault here as the agency is, then how does that meet your heavy burden for them not to reopen? Well, and I may not have understood your prior question because I don't view the petitioners as being at fault. The only thing they have done was seek a promotion, which they got. The only thing they have done is they didn't appeal when the other petitioner did appeal. That's correct. And they didn't appeal even though the document, the opinion explicitly told them they had 35 days. The other fellow got the same kind of a document. He appealed, got it reversed, went back to the administrative judge and prevailed. And they waited for 10 months or something like that and then came in. Well, that's correct, Your Honor. There's no way of getting around that. But here is why – Well, that seems to me to make it a very unappealing case to say that despite that, the board abused its discretion in effect not waiving the time limits for that. And I understand that position. But what I would say that would make this case different is the DECMAR case and my petitioner's case are essentially the same case. Now, they're not literally the same case, but the facts and the law that applies to them are identical. These are – But the board is not bound by the decision of the administrative judge in the DECMAR case. That's correct. We don't take the position. I think it's clear that DECMAR – Every time the board takes an action, we'll find a group of people coming in afterwards saying we were similarly situated and you should have used your discretionary authority to reopen our cases, which are now late. We understand they're late. But on the basis of this authority from the federal circuit, they would say you must give all of us similarly situated the same benefits. Well, I don't think – Nearly every ruling that benefited an employee would result in an afterflood of these similarly situated people who are saying we didn't file a claim, but now we are, and you have to exercise your discretion. I recognize that's a legitimate concern. We only know that the distinction that this case presents that I think would not present that concern in the general sense is that these are not employees, say, in New Jersey, who are receiving one decision and another employee out in Seattle or San Francisco. So in every case, we're going to have to decide how similarly situated is similarly situated. Well, I don't think you have to – no. I don't believe that's the case because I believe it's – No, because I believe the difference is – and I believe there's a difference between being similarly situated and being identically situated, which is what these individuals are. There's absolutely no difference between the date they applied, were promoted, the positions they sought, the passage of the regulation that was implemented on them, the August date when they were told that their pay was being reduced and they basically got the same exact letter. There is literally nothing – Why is there no distinction between these employees? We don't know, do we, why the board refused to permit these appeals. Well, no, we don't. We don't. That's correct. So we have nothing to review. One reason could be that the board does not agree with the administrative judge's decision in Dakmar. Couldn't it? Well, I guess conceivably it could be. But what I think this court – and I realize I'm citing to an unpublished decision. I know it's not – Well, it's not only citing an unpublished decision. There's an explicit statement at the beginning of that decision that this is non-citable as a precedent. And I don't understand why you cite it if it says it's non-citable. Now, non-precedential opinions may be cited, but the regulation that changed that made it explicitly prospective only. Well, I – and to the extent I reached that regulation, I did not know I was doing it at that time. I saw – I did see the Timmers case, and I saw it in discussing this with my clients, the similarities I saw in the issues presented. I feel that the mistake of law – and without getting into Timmers, I feel the mistake of law is clear. I noticed that the MSPB – now, I'm sure their position is we don't have to discuss it because you didn't appeal it. But the retroactive application of that regulation appears to me to be plainly against the law. I think the US Supreme Court is pretty clear in the case of – with Bowen versus Georgetown that – Yeah, but the logic of what you're saying is even if your client had never appealed even at the AJ level, he's entitled to come in years later and say what was done to me is against the law. And therefore, even though I never filed a stage one appeal, I now am entitled to come in. And if the AJ turns me down, the board must reopen the proceedings. That sounds very – We don't take that position. We believe it's a significant fact that we did file an appeal. There's cases that the MSPB relies upon. Well, if it was necessary for you to file an appeal in the first place, then why wasn't it equally necessary for you to appeal the adverse AJ decision to the full board? Well, because I don't believe the board itself views it as necessary to have filed it in the first instance in a timely manner. They have set forth, I would say, in a regulation giving themselves the authority to review these cases, to look at untimely filed petitions. But isn't that, the decision whether to waive a time limit, isn't that almost the essence of agency discretion? I can't think of anything that's more within the discretion of an agency than the decision to say, well, we say you have to appeal in 35 days, but in extraordinary and exceptional circumstances, we will waive it. That seems to me to be something that it's almost impossible for a reviewing court, unless it's going to poke its nose into all the details of agency action and review them itself. I don't see how we as an appellate court can say the agency abused its discretion in your case, not in that case, but in your case, in not waiving the 35-day limit when you came in 10 months later. Well, what I would point to, Your Honor, is the agency's own decisions, where they talk about the test that they apply when determining whether or not to reopen a case. And I think they're pretty explicit. They talk about the balancing of the desirability of finality and the public interest in achieving the right result. And when I read that, and that's set forth in the Beck case, they're saying they're looking at the time. They're recognizing that the request to reopen is – the petition is untimely. So we're looking at – Are you appealing the rejection of your argument that you had good cause for the late filing, or are you only appealing the decision of the board not to reopen? We are only appealing the decision not to reopen. That's all? That's it. Because in reviewing the standard of the board as to good cause, we understand that that standard is a pretty high standard in and of itself. But we view this test for the standard to reopen as a separate test.  May it please the Court. Petitioners advocate a rule that would allow parties to petition the board to reopen their cases long after a final – a decision in those cases had become final. In such a rule – of general applicability, it seemed to me he was saying under the particular and perhaps unusual circumstances of his exact case, the board abused its discretion in declining to reopen. That seems to be the opposite of a general rule. It would have the effect of being a general rule. Well, I don't follow that at all. If he says anybody else with my exact facts also should get reopening, that's not a general rule. That's the opposite of a general rule. That's a very specific application which would only apply to him and anybody else with identical facts, which would be exceedingly unlikely. Well, it would open – in future cases, there would be no reason for a litigant not to request reopening. It would open the floodgates. Any time that a petition for review is untimely, it would be almost malpractice for an attorney representing employees not to come in and argue, aside from the good cause argument, that the case should be reopened. What are you saying? The board has too much work, so we have to ignore the equities here because otherwise the board will be stressed out and have to work longer? Well, as this Court has made clear, there's no right to request that – I'm just trying to understand what your argument is. Your argument seems to be don't accept his argument because if you accept his argument, the MSPB will have more work to do than if you don't accept his argument because he and maybe some other people will file things that otherwise they wouldn't file. I'm sure you're quite correct. There would be more filings than otherwise. But why is that a reason to reject his argument? Well, I think the reason to reject his argument – If the board needs more resources, it should get more resources from the Congress. That's what the appropriations process is for, every year, to decide how much money the agency is going to need the next year. Right, but there are good policy – this is a strong policy reason for the board not to reopen untimely petitions for review. Is the government content that we have no jurisdiction to review the board's refusal to reopen on its own motion? Well, I think that's the case, and I think that's made clear. I'm going to ask you whether you think it's the case. Is the government's position that the decision whether to reopen on its own motion lies wholly within the discretion of the board and that we have no business and no authority even to consider that? If the board has denied it, that's finished. If the board wants to grant it, that's up to the board. Well, I think this court set out the standard in two cases, Azarkesh and Haynes, and what it comes down to is whether the board has issued a final decision or not. Once the board has reopened a case and issued a decision, that is clearly – But here the challenge – here, as I understand, the only issue that he has presented, as he told us at the end of his argument, is whether the board improperly refused to reopen the case on its own record. And my question to you is, does the government concede that we have jurisdiction or is the government's position that we have no jurisdiction even to consider that question? That's certainly an arguable position that the decision whether to reopen on your own motion is wholly within the discretion of the board. And that's – I agree that it's within the discretion of the board, and that's clear from reading Haynes, wherein Haynes – The question is, is this issue, reviewing a decision declining to reopen, inside our jurisdiction or outside our jurisdiction, and you still haven't answered it. Well, to be clear, it's outside this court's jurisdiction unless there's a final decision of the board that discusses this. Well, then I don't see how it can be outside of our jurisdiction unless something happens. Well, if Haynes, for example – Let me suggest something else to you. I suppose your position would come down to the following. Even assuming that we do have jurisdiction to review the board's refusal to reopen, we could do something about that only if there were truly extraordinary circumstances. And whatever one may think of the merits of his case, they don't amount to such an extraordinary circumstances as to justify us in overturning the board's discretionary action. I take it that would be your ultimate position. That's our argument in a nutshell, very succinctly put. Let me explore just a second your point about our absence of jurisdiction. Assume a case where there's blatant racial or gender discrimination that alters somebody's pay salary. And the board – maybe the discrimination even causes them to miss their deadline, so they didn't file on time. And the board declines to exercise its discretion. Would this court have authority to, in that sort of instance, intervene and say the board should have exercised its discretion because discrimination permeates this record? No. I would say the answer to that is no. Prohibited discrimination does not give the board jurisdiction. And assuming this is an untimely case – The issue isn't whether the board would have jurisdiction. The issue is whether we could reverse the non-reopening decision. You're correct that my hypothetical has some problems. The point that I'm trying to come up with is an extreme circumstance that itself causes the delay in filing. And then the board declines to reopen, exercising its discretion, saying nothing. So we really again don't have anything, any explicit decision to review. Do we have authority then? My answer is no. They're setting aside this good cause analysis on timeliness. My answer is no. And looking at this court's case in Zarkeesh, that petitioner in that case, she suffered a strong hardship. She was denied disability benefits, and it was because her attorney had misplaced the letter from OPM. We said in that that we've assumed without deciding that we do have the authority, but we've placed the heavy burden that I discussed a minute ago with Mr. Lynch on the parties. Does that amount to a rule that we do have jurisdiction to review? No. I think the court assumed without deciding. It still hasn't decided. But then it acted. Does its action speak louder than its words? How am I to understand my court's own? We did the same thing in Zamat. So there's been at least two or three cases where we've done this. Should I read my court's action or my court's words? I think both. I think on the one hand, the decision not to issue a ruling on this question that we're talking about, reserving judgment on that, that leaves the question open. Can we duck it here, or do we have to decide it now? I don't think that the court needs to decide it here. The court can assume that it has authority to review this, and then consider that the standard here would be a broad, the board's broad discretion, so it would have to be an abusive discretion. Abusive, that reserved discretion, as the court used the phrase in the Zarkeesh. Counsel, is your position here in this argument inconsistent with your brief? Because if it's correct that we have no jurisdiction to even review the non-reopening, then you should be asking us to dismiss the appeal because we have no jurisdiction. But at page 18 of your brief, you instead ask us to affirm the board, which we would have no power to do if we lacked jurisdiction. So which is it? Do you want us to affirm or dismiss? Is it a lack of jurisdiction, or did they simply act reasonably? No, this court has jurisdiction because there's a final decision before it from the board, and that gives this court jurisdiction under 5 U.S.C. 773. You mean the decision to dismiss because they were late filing. Right. So we're asking about the decision of their failure to exercise their discretion. The fact that the petitioners are now forfeiting that argument on timeliness doesn't deprive the court of jurisdiction, but it certainly gives this court very little to decide because the timeliness... But does it leave us anything to decide? If your position is, well, we have jurisdiction over the appeal, but the only issue is non-reopening, and we don't have jurisdiction to go into that, so it seems like we have to dismiss the appeal because, as presented by the appellant who gets to decide what he wants to present, there's nothing left within our power to decide. I think the court very well could rule that way. I wouldn't call it lack of jurisdiction. It's almost failure to state a claim because there is jurisdiction because there's a final decision under the statute that gives this court jurisdiction. That's all that is necessary. But the fact that there's no argument here that's capable of overturning the board's decision leaves this court without... Well, what about his retroactive application as meeting the heavy burden for their failure to exercise their jurisdiction? That's what their argument ultimately comes down to, but that is not a clear and material legal error. It's not something that's been... It would be if this court had already issued a case saying that those regs... invalidating those regulations, and if the board had instead ruled that these regulations apply despite the controlling precedent, that would be a reason for reversal. But this is here and there's no court, including this court, and the board hasn't said in their presidential opinion that these regs are inapplicable. Can I just ask you something in response to the question that Judge Michel put to you? I take it what you're saying is if we were to conclude that we cannot consider the board's refusal to reopen on its own, it's not that we don't have any jurisdiction to consider it, but that's the kind of agency action that we cannot reverse. That's something wholly within the discretion of the agency, and therefore the appropriate disposition would be to affirm the board's refusal to reopen on its own. I think that's right. That is correct. And just to compare this case to Haynes, the main difference between this case and Haynes is there was no final decision in Haynes. It was just a letter from the board's clerk. But what if there had been a holding by this court on a rule of law, which holding would make it clear that the disposition by the board of an appeal was wrong, and the appellant then goes right after we've issued our decision to the full board and says, please reopen my case, because it's now clear, it wasn't clear earlier, but it's now clear that the Federal Circuit has spoken on the issue, and I'm entitled to the relief I asked the AJ for and was denied because the AJ's decision was before the Federal Circuit spoke. Wouldn't that be a circumstance where it would be an abuse of the discretion if the board nevertheless refused to reopen? You know, that's the Beck case. If the one piece that's missing from that hypothetical is how much time has passed, if this happened before the initial decision became final as in Beck, then my answer would be yes, that would be a clear legal error where the board should have reopened. But the error would be not refusal to open, but the substance of the decision. That's correct, yes. On the other hand, in this case, with 10 months passing by, and that's one factor that the petitioners have not really addressed, is that with the time passing by, the balancing that's discussed in the Czarkice between the desirability of getting it right, getting the right result, and finality, when 10 months have gone past, finality is much more significant. Well, what's the problem with 10 months? The board would have had the same decision, I suppose, if it were 10 days. Well, no, 10 days would be a much closer call for the board, and that's what happened in Beck. Well, what's so bad about 10 months? Did some witnesses die? Were some documents lost? Did something happen that prejudiced the government here or complicated the work of the board? Well, that was my original point, the interest in finality. If that's ignored, that would open the floodgates, that there would be a lot of— You're not answering the question. The question is, is there some reason to believe that the 10-month delay has prejudiced the government's case? I don't have any reason to believe that it's prejudiced the government's substantive case on the merits. Your point is that 10 months is opening the window wider to people who can come in and say they're similarly situated. Exactly. On the other hand, it was only about a month after the Deckmar decision favorable to the other man. Right. And that makes it very similar to the case that we cite in our brief, Shaffer, Buttigieg-Shaffer, where someone who had been denied a promotion while his co-workers had also been denied a promotion, just gave up, abandoned the case for a while, and then when his co-workers ultimately succeeded in their appeals, he tried to reopen. And that's what I'm discussing when I bring up the finality issue. That's what the problem is here, that there would be no limit to requests to reopen if it's acceptable to allow— It sounds like what you're saying is that the board does weighing between interests on the one hand, such as finality, and on the other hand, what you called getting it right. And it does some kind of weighing, and then it makes a judgment call using a discretionary approach. And if that's right, then we would certainly have the ability to review whether the conclusion reached by the board was so horrendous, a mis-weighing of those conflicting factors, as to amount to an abuse of discretion. So we would be able to reverse in an extreme case such as Judge Rader alluded to earlier, right? Well, that assumes that the board is—assumes that this court is jurisdiction over the requests to reopen, which don't even exist under the— I thought we had agreed a moment earlier that it's not a question of jurisdiction, it's a question of whether the nature of the board action is something that this court can poke its nose into. Let me ask you a different question. Over the years I've been looking at all of these board cases, I get the impression that when the board reopens on its own, what happens basically is there's an application petition for review. The petition for review does not meet the board's regulatory standards of newly discovered evidence, etc., etc. So the board denies the petition for review, and then on its own motion it reopens it, because it sees something in the administrative law judge's decision that it wants to change, and it wants to announce something that is different. And then it writes an opinion of its own explaining how, why, in most instances—not most, but frequently— it affirms the administrative law judge's decision, but on a somewhat different ground. And I wonder whether this kind of situation, where all that's involved is delay and then a subsequent decision in another related case, whether that's enough to bring it within the board's traditional authority to reopen on its own. I don't know. It seems to me a different sort of case. You're exactly right in describing the board's practice. The majority of litigants before the board are not represented by counsel. They're pro se, or they have non-attorneys representing them. And so the board does a comprehensive review of initial decisions beyond what errors identify the petition for review that the board gets. And so when the petition for review doesn't identify an error, the board may well reopen a timely petition for review on its own motion. And indeed, under that theory, one could say that the reason the board refused to reopen on its own is it didn't see anything in the decision of these four cases by the administrative law judge, despite the claim of retroactive application, that it wanted to change. I think that's a reasonable assumption, that it didn't see a clear legal error. All right. Thank you, Mr. Lynch. We'll give you two minutes for a rebuttal, even though you used your time. Thank you, Your Honor. The last point, I think, is important about the assumption of what the board was doing. And I think it's important to remember that in Dekmar's appeal, when he appealed, he appealed in a timely manner. But when the board reviewed it, they said, Dekmar, the reasons you've raved ex post facto due process, they're wrong. We deny them. But they did see something wrong in the case. They saw that something was the retroactivity because they sent it back to the ALJ for that specific purpose. Now, when my clients come along, the Dekmar decision is not the legal change in the law. It's just a trigger for them to file. But the law was always the same since Bowen. The law always was that you cannot retroactively apply a regulation. So Dekmar is not as if a precedent we're relying upon. It's more like a demonstration to the board that there's something amiss here. They saw that there was an issue in Dekmar, and they sent it back. And they sent it back, and they had a hearing in the Dekmar case. The hearing, in my view, wasn't really necessary. It was really a legal issue because it was a circumstance where jurisdiction and substance collided. If there was jurisdiction, if their salaries were proper under the law, and their salaries were only proper under the law, if the regulation couldn't be applied retroactively. So when the Judge Stevenson found jurisdiction, she essentially found for the merits. Now, when the petitioners go back before the board with the Dekmar decision in hand, they call a new evidence. I agree it's not. But it should trigger, it should, that there's something amiss here. That there's something, like they did in Dekmar, that there's something out here. Now, the only difference between us, the petitioners, and Dekmar is we specifically requested that they review it. And in their refusal, and I think this is important too, to consider that request. That is an extra, that in and of itself is an, I view, under the circumstances of this case, not always, but that in and of itself is an abuse of their discretionary authority. What are you saying? I don't understand what you're saying. They refused even to consider it. We don't know that they refused to consider it. It's equally plausible they considered it and weren't persuaded by it. I don't know. Well, that's correct. But I also view their decision certainly doesn't discuss it, and they certainly do have a standard by which they evaluate them. And I'm not saying that they need to have any lengthy discussion of it, but I think there needs to be at least some reflection that the request was made and in some way was found not to have merit. Now, are you saying that the non-reopening decision is reversible simply because it wasn't explained? No, that's not what I'm saying. What I'm saying is I think the court can take – I think there's several approaches. The court's ultimately going to find there's ultimately one, but I would submit that there's two approaches here. One approach would be to simply remand the matter back, tell the merit system board it was an abuse of discretion because they didn't reopen. But there's also another approach, and that would be to say that under the circumstances of this case, that with the facts presented to it and the request to reopen, that that request should have at least have been considered, have been dealt with in some way. Meaning discussed? Discussed. That it was abuse of discretion just to simply deal with it in a manner they did. I think we have your case clearly in mind. We've given you lots of extra time. I appreciate that. We're going to take the case under advice. Thank you.